The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning. Welcome to the Ninth Circuit, in person no less, so it's nice to see you. Before we get to the argued case today, I want to dispose of several submitted cases. They are Kapachian v. Garland, Avalos v. Keishu Saki, DAC Lease Industries v. Disney Store USA, Dagny Riley v. Caliber Home Loans and Millennial Mortgage Corporation, and finally Sanchez-Patron v. Garland. So now we have our sole argued case for the day, Johnson v. City of Morro Bay, and I believe Mr. Crawford, you are first up. Good morning, Your Honors. May it please the Court, my name is Daniel Crawford. I'm here representing the appellant and the plaintiff, Frank Johnson. I would like to reserve a few minutes of my time at the end for rebuttal. We'll try to help you, but watch the clock, okay? I will try. First, we hope you agree with a few of our points. We hope you agree that when the officers approached Mr. Johnson's home for the purpose of arresting him without a warrant in his home, that was a presumptively unconstitutional act, where unless there was some exception to the warrant requirement, the presumption becomes conclusive. Let me just ask you this, since it's obviously on the table here. The district judge relied on Van Aten and not London. Right. Are those two cases reconcilable in your judgment in light of Hardines? I don't—I'm not really sure. The Van Aten case involved an arrest from a common area, the hallway of the hotel, whereas this was over the curtilage. In London, they said this is not yet the case to overturn Van Aten, although it may not be on good foundation. And I think I've thought about it a lot, and I think this would not be the case before us here to overturn Van Aten for the same reason, that it's not a common area. It's a curtilage situation. Does it matter that Mr. Johnson opened the door, and then I think his declaration says that he stepped into the driveway, which I believe is a common area. Does that affect the analysis? I don't think it does, and I think that the—what happened with—when you have to look at his—whether he consented or not, which is one of the bases that appellees put forward for curing the presumptive unconstitutionality. The problem is taint, that once there was a Fourth Amendment violation or once there was a presumptive Fourth Amendment violation, and then— Yes, it did. —conduct and other things that happened. Sure. So, clearly, this wasn't a ruse, right? The officers did not obtain consent by a ruse. Would you agree with that? I agree with that. Or by coercion. I think that Mr. Mar—that Officer Marvell's statements, you can say, certainly, they would have led a reasonable person to think that there was something else going on here. But I don't—this wasn't the sort of ruse that the case is generally addressed, where there's just a straight-up deception. What if the officers had more than one intention when they arrived at Mr. Johnson's home? That doesn't matter, as long as—if they also wanted to gather information. I think that was discussed in the Escobar case. If they also wanted to gather information from him, if they also wanted to investigate further, that isn't the key. This Court in the London case said—or it's London, I'm not sure how it's pronounced— said that, you know, if they encroach on the curtilage with the intent to arrest the occupant— Right, but London or Lundin or however you pronounce it, they didn't talk about what happens if the officers approach with more than one intention. So they said if you approach with the intention to arrest without a warrant, that's a problem. That's a Fourth Amendment violation. But what I didn't see in that fact pattern was whether the officers had any other intention. That is true, but in this case it is conceded, it's undisputed, that—this was undisputed material fact number 24, and I think it's on page 38 of the excerpts of record— the fact is the officers went there solely for the purpose of arresting Mr. Johnson. That was an undisputed material fact. Well, does it say solely or that they went there for the purpose of making an arrest? Because how do we factor in—like Lundin is talking about subjective intent, but we know that Fourth Amendment violations are judged by an objective standard. So what if their objective conduct shows another intent? What do we do with that? Well, your first—the first part of your question is what does it actually say, and I'll read from it right now. It says, number 24, the officers traveled to plaintiff's home solely to arrest him. Defendant's response or appellee's response, undisputed. So the suggestion that they went there for some other purpose that's developed before this court is not what the record suggests. The record says solely. Right, and so the struggle with that is that—so I don't think anybody could dispute that they went there with the intent solely to arrest him, but when they got there, they talked to him for like 10 minutes, both outside and inside the house. So then what do we do with that? Because we do have Lundin or Ludin, however you say it, that talks about that we look at their subjective intent. But we also have the Supreme Court that's repeatedly told us we also look at objectives, so I think we probably have to look at both. And objectively, wouldn't we—I mean, we have to say they must have wanted to talk to him because they did talk to him for 10 minutes. I think that—a couple things about that. I think that what Justice Scalia wrote in his pithy way in Jardine's—how do you pronounce that? Jardine's. Jardine's. Jardine's. It means gardens. Was that—he wrote, the virtue of the Fourth Amendment's property rights baselines, it keeps simple cases simple or easy cases easy. I think that when you're looking at a property rights case, when you're looking at breaching the curtilage, coming onto the curtilage, in that situation you don't have to look at—you don't have to judge the officer's actions objectively. If you can get to their subjective intent. That's not—Scalia in—that's what I thought you were going to say, but Scalia in—I'm going to say the case wrong, but I'm going to say the name of the case. Jardine. Floor. Floor. In that case, Scalia said it was an objective inquiry. I mean, we added that it was subjective, I guess, in London or Luton, and we have to follow that, but it's also the Supreme Court has said it's an objective inquiry, so I think we have—I think it's got to be both, right? And so I don't—I'm just really struggling as to—are you saying that we have to say they did not have an objective intent to talk when they did so for 10 minutes? I think that based on the record that's before this Court, yes, we have to say that because there was—it was an undisputed material fact. If that had been disputed, we could have—we would have been in a different situation. Well, to be—I mean, not to parse it too fine, but they said that they went there with the intent solely to—but, I mean, apparently when they got there—I mean, all we can tell from this record is when they got there, they had also apparently formed the intent to also talk with the guy because they did so for 10 minutes. Can I just interrupt one second because you tell my colleagues you're struggling with one aspect of this, and what's different to me about this is this is a civil case. Yes. This is not a criminal case. Right. This is a summary judgment. Certainly. The district court decided certain things based upon certain stipulated facts. It's highly unusual that the police would admit the subjective intent of going there. I agree, to their credit. How do we get—how do we get in this setting to what—even if they did have a second intention, it's not in the record. This is a summary judgment. At most, if my colleagues are correct, would we not have to send this back to the district court to try it before a jury? This is a summary judgment. We can't add new facts, can we? I don't think so. And, Your Honor, I agree with you. I think that our best outcome from this case is remand for further proceedings. But wait a minute. What happened when they arrived and the length of time that they spoke with Mr. Johnson, all of that is in the record. That's not extra record information that we're making up. It's in the record. And we can consider summary judgment on any basis in the record, right? Yes. What also is in the record, though, is that despite the 10 minutes of talking or whatnot, I think this was on Dispute and Material Fact 46, was that the arrest came 2 minutes and 15 seconds after they arrived. I can't remember what the exact fact is. But it's within the first several minutes. All the talking afterwards is after the time that the parties have agreed there was an arrest. Was that actually the arrest? Was there just a seizure at that point? Was it a pre? I don't know. But I do know that for purposes of the record here, there's no dispute that the arrest occurred very early on after they'd arrived. And also, everything that they did, everything that they, with talking to him and all that, that occurred after they effectuated their subjective intent of breaching the curtilage, knocking on his door for the purpose of arresting him without a warrant. Do you want to save any of your time? Yeah, I'll save the rest of my time. My goodness. Okay. So I just will say that I think what we have here is a presumptively illegal arrest, no exception for it. And for that reason, we ask that the judgment and the decision of the district court be reversed. Thank you. Thank you. So, Mr. – let's see if I'm saying this correctly. Is it Hyatt? Hyatt, like the hotel. There you go. My relatives in Kentucky took the Y out and put in IEN. Thank you. We have a unique case here, a unique set of facts. I could not find another published opinion that dealt with the type of information we have here, because not only do we have a complete body cam accounting of the encounter as a record, we have clear audio, we have an entire transcript. Just a real quick fact, since you have body cam and all. So my understanding was that they spoke for like ten minutes when you count the outside and the inside time before they arrested him. But I think you mentioned that there's an undisputed fact in here that they only spoke for two minutes or something. What is the story there? I would have to read that. I believe counsel alluded to number 46. I don't have that in front of me. It says two minutes and 15 seconds after he opened his front door, they stepped over the threshold, and then they arrested him and instructed him to put his phone down face away and put his arms behind his back. And then you say undisputed. There's a lot of weird undisputed facts in it. One of the strategies was to make sure that we didn't get a denial based on an undisputed fact. We felt that the transcript and the body cam basically demonstrated a pristine. But you can kind of, I mean in theory, you can kind of stipulate away or concede away even the body cam. I don't understand what you mean by stipulate away. Well, you know, if the body cam says that you arrested him ten minutes after and talked to him for ten minutes, but you stipulated that it's undisputed that you arrested him two minutes afterwards, what do we do with that? I think you need to go with that. I didn't want to get into a battle of. Go with that. It sounds like you said if you come to Fork in the Road, take it. Which one do I go with? The one less traveled, right? I do not think that the timing of that arrest, whether that's two minutes and 46 minutes after they crossed the threshold and entered the home or it's the ten minutes later when they finally put handcuffs on him, I don't think that's determinative of the issues in our case. The issues in our case deal with, and let's take them one by one, I believe that the body cam video and the transcript demonstrate a pristine knock and talk, and that if that video cam were to be shown to the public. How do you reconcile that with the undisputed fact, whatever it is here, that they made the determination they were going to arrest him without a warrant for their assault? Actually, that's not the one that I'm looking for. You're looking for number 26 in which it said their subjective intent as they traveled there was to arrest. 24. 24. There was no disputed fact either way of what was their subjective intent at the time they arrived at the residence. So when you – was this your case below? Yes. So when you did – was it sort of one of those clever things like, aha, they didn't quite get this right so I'm going to say this is undisputed because it doesn't matter when they were traveling, what matters is when they showed up? Absolutely. Again, I didn't want to get distracted by – and oftentimes opposition will throw in their own undisputed facts just to create some disputed facts that they can point to at the time the judge makes their decision. But in this case, though, the district judge cited that fact, right? That was their intention to come. Justice Scalia in Jardines said, basically using the example of the Girl Scouts, somebody – some Girl Scouts may have an implied right to go into someone's curtilage to sell cookies. There is an implied right in that case to bring a, you know, drug-sniffing dog onto the premises. In this case, there's no finding whatsoever that I'm aware of by the district judge or any of the stipulated facts that there was an implied right on the part of Mr. Johnson for these folks to come onto his curtilage to arrest him, right? Two things. One, the district court judge made it very, very clear that the body cam video was a very important part of his decision. Second, when we talk about what is the implied – Did the body cam indicate what their intention was? The body cam indicated what precedent has shown us for decades should be the primary question, which is what is the reasonably objective conduct of the officers at the scene. This subjective intent. Is that what Jardines provides? Jardines talks about, number one, they make it clear that they're very limited in the scope of what they're looking at. They use that language, and they say we're limited here. The facts of our case do not apply. We did not – I don't think anybody can – Come in. I don't think anybody can look at that and say that was unreasonable. I don't think anybody can look at that and say that was a seizure. I don't think anybody can look at that and say that was a search, yet that's what they're implying. But, again, counsel, again, we're all on the same team here, but we're trying to understand this. That may all be true in a normal neighbor-to-neighbor kind of deal, but these folks came according to the stipulated facts. Their subjective intent was to arrest Mr. Johnson under the London case. That's all you need, right? And under the London – That's the carve-out from Jardines in terms of the knock and talk. They didn't come there to knock and talk. They came to arrest him, right? And in London, they carved out the exact open door that I get to walk through with the facts of this case. We do not hold that an officer may never conduct a knock and talk when he or she has probable cause to arrest a resident but does not have a arrest warrant. An officer does not violate the Fourth Amendment by approaching a home in a reasonable hour and knocking on the front door with the intent merely to ask the resident questions, even if the officer has probable cause to arrest the resident. But it doesn't speak in that to whether or not their intention was to go to arrest him. That left that question open, and I think arguably that's the distinction, is it not? That could be a distinction if you wanted to rule against my client. However, the case law and the precedent talks about viewing things objectively. When this case is viewed objectively from the transcript, from the body cam, from the undisputed facts, this was not an unreasonable— Let me get back to something that my colleague, Judge Van Dyck, mentioned. If the body cam says one thing and the stipulation says something else, if I understood it correctly, you're saying the stipulation controls, right? The body cam must be viewed as part of the record. I understand that, but the judge made certain findings based on certain stipulations, and there was a stipulation as to why they were there. It's all there. I mean, this is a strange case. I grant you that. I've never seen anything like this where you have a basically criminal law deciding a 1983 case. It's weird. It's really a strange case. But in this situation, the stipulation— I was frankly shocked to see the stipulation as to why they were going there, the subjective intent. Without that, it might be a little different. But aren't we in a situation here where, based on the stipulations, this case needs to go back to the district court, let a jury decide what the facts are? And I would argue no, that the stipulation talked about their intent as they traveled there. There is a blank record with respect to what their intent was when they arrived. That blank record is filled in with the transcript and the body cam video. Subjectively? Objectively. Well, I can say the issue here is the subjective intent. Is it not under London? Their subjective intent was to go to arrest Mr. Johnson. I saw nothing in the record that ever changed. Where is there in the record anything that says that they went there and changed their mind? What the record demonstrates objectively is they conducted a classic knock-and-talk encounter. And under Hardinez and under London, arguably, that doesn't apply anymore when they go with a subjective intent to arrest him, right? And I would respectfully argue no. London has carved out the exception that applies to our case. And we just talked about that. And as has the Garden case that I will not mispronounce. Hardinez. Hardinez. That also said our holding is very limited and it's limited to these circumstances. You have the unique opportunity here to clarify and to make an imprint on what an officer should do. The record here, body cam video, the transcript is classic knock-and-talk. It should be given to officers as a premise and a precursor and an example of what should be done. But what if we concluded that the knock-and-talk exception didn't apply? Would another exception apply? I don't think. I think knock-and-talk is the entry for the conduct that we have. We don't have actual circumstances. What about consent? I mean, it's undisputed that he repeatedly invited them into his home. Even when they demurred, he insisted they come into the home. And also he said in his declaration that he stepped out of the house and stepped into the common area of the driveway. How do all of those factors play into this situation? Well, that's why I thank you for the opportunity to talk about the consent, which was unambiguous. One of the things that we have here that is very different from all the published cases is that we have a very clear idea of what the suspect had and what the suspect knew. When we talk about implied consent and what is a social norm, it's a social norm for a neighbor to come up and knock on the door and then for you to make a determination of whether or not you open that door. Now, you don't know whether the neighbor is coming to ask for a cup of sugar or whether the neighbor is coming to complain because your dog keeps going to the bathroom on their front lawn. However, you have that choice. So it's implied social norm to knock on the door, exactly what the officers did. Implied social norm for the person behind the door to look out the window. It's conceded in the appellant's brief that the body cam video is a direct representation of the curtilage and the front door. You'll see a very large window where Mr. Johnson could have looked out and gone, oh, that's my neighbor. I know my dog has been going to the bathroom on their lawn. I know they're mad about that. I choose not to open this door. And the declaration from Mr. Johnson said he had dealt with law enforcement as a first responder for many years, that he knew that they were there because his daughter had complained. He was distressed about that. He knew that he did not have to open the door. He knew that he could have called a lawyer, and he knew that he could be arrested at any point in time. He chose and consented to open the door. Let me ask any other questions of either of my colleagues. I really appreciate the fact you've let me go over my time. So I gather you're arguing there should be a highly published written opinion, right? Is that what you're arguing? That would be a bonus. All I want is to have the decision upheld for my clients. I understand. Thank you. Very well. All right, please, you have some rebuttal time. Thank you for your indulgence here. Just a few things. Counsel talked about the implied social normal. That's exactly what Lundin addressed. You say this is an odd case. When I got into this, I was very surprised by the Hardinas and the Lundin cases. I thought this is very odd because usually there is the objective analysis, and they're saying, no, look at the subjective intent. Counsel, I don't know that I read them to say that you don't look at objective. They just are saying you look at subjective. In other words, I don't know where it's sort of either-or fallacy, right? Because if Lundin, or however you say it, is saying that you only look at subjective, then the Ninth Circuit's case law is directly inconsistent with the U.S. Supreme Court's cases going back, the Jardines case and the cases before that. So is it really your position that you can only look at the subjective intent, not also the objective intent? Again, odd case here because the subjective intent is conceded. Normally, you'd have to look at the objective factors to figure out what was in their minds. I think his position he's made clear is that it was conceded as to when they were traveling there. He was trying to be clever and thought that the question you were asking was only about the traveling, and so he could concede that away, and it didn't affect that. Whether that's a good litigation strategy, I don't know, but that's his position. So let's assume for a second that we can consider also the objective intent. Why is not the talking something in addition to their intent to arrest him? A couple of things. The Lundin analysis that counsel read was followed by their conclusion of this court in that case, which was, quote, the knock-and-talk exception to the warrant requirement does not apply when officers encroach on the curtilage of a home with the intent to arrest the occupant.  Yes, I agree. They don't say solely in Lundin. But the problem is, if we read it the way you want us to read it, which is you show up and you have the intent to arrest, it kills every other intent you might have. You might have 16 permissible intents, but if you also have the intent to arrest, if that's the case, I think that what I'm about to tell you would be unlawful, which I just can't imagine is true, which is I'm an officer and I'm investigating, say, a white-collar crime or something, somebody or maybe even another officer. We're going to arrest the person, and we can go get an arrest warrant, but we're pretty sure that they will just consent to me coming in their home and arresting them under the circumstances. So you go up and you knock and you say, you know, we're here. We're going to arrest you, but we're waiting for the warrant. Would you consent to us just coming in and arresting you now? And let's say the person's full understanding consents. That would somehow be a violation of their Fourth Amendment rights. They can't consent. As soon as they come up and knock on that door under your reading of Lewden, they've committed an unfixable Fourth Amendment violation. That's weird. I'm afraid so. Again, I was surprised when I got into this case law and read Lewden. I thought, wow, that's very strange. But doesn't Lewden make clear that more than one exception can apply? Because Lewden analyzed potential exigent circumstances exception and said that it didn't apply. And here exigent circumstances do not apply. That's agreed upon. But consent certainly seems to apply. And I know I keep harping on this, but I don't believe you answered my question before. He also walked onto the common area. He walked out of the house, exposed himself to a public area, and then walked onto the driveway by his own declaration, which means he was in the common area, which is like Van Eten, where they were in the common area when they knocked on the door. So isn't this case a little more complicated in that a whole number of things come into play? A little bit. But, again, I think that once the Fourth Amendment presumptive unconstitutionality is established, everything that he said afterwards, any potential consent, is tainted. You look at temporal proximity, you look at intervening circumstances, and you look at the relationship between the purpose for the original officer's original action and the purported consent. And all three of those weigh just heavily in favor of that being fatally tainted so that any consent he may have given 29 seconds after he stepped out of his door, because that's what we're talking about. He knocked on his door, he stepped out, and the officer said, you know, hello, Frank Johnson, are you Frank Johnson? And then to the time he said, why don't you guys come on in, 29 seconds elapsed. Why is that consent tainted? So you're talking about a Brown inquiry here, and it's got the three factors. But just more generally, why is the consent tainted by him coming out and saying, you know, please come into my house? What is it that makes the consent tainted? I'm not talking about, like, the three factors, but what, I mean, he's agreeing to let them come in. Usually you think of the consent being tainted by the illegality. You're scared, you know, but here, see, he doesn't know. He doesn't know that the officers are planning to arrest him. And so how can that have, how can them have knocking on his door have tainted his consent? He gives the consent without knowing. He knows that they came across his curtilage to knock on his door because it was an unspecified material. You needed to cross this. But if he thinks they're there to do a knock and talk, I mean, it seems like they are there to do a knock and talk, but let's put that aside. Let's say that if he thinks they're there to do a knock and talk, he doesn't know they're there to arrest him. How can the second two Brown factors cut in favor of your client when there's no, even the first Brown factor, you see the temporal proximity. The fact that it's close in time is because it hasn't, you know, something illegal was done and it's still affecting your judgment as the person who's being arrested. But here, he doesn't even know any of that. Like, doesn't the fact that he doesn't know any of that cut against him on all three of those factors? Darn, I cannot remember the case. There was a case which was about consent and taint, and it was where a suspect was arrested in his open garage, was arrested in his open garage. His, I believe it was his sister came in and then consented. She saw that he was arrested and then consented to a search, and the search was, the consent was considered tainted. In that situation, she did not know that he had been arrested legally, illegally, lawfully. She had no idea about that. She saw what had happened, and in the same way that Mr. Johnson had seen what had happened, he didn't know whether they had a warrant. I guess you'd assume that if they're going to arrest you that they've come with a warrant. In our case, Furrow from 2000, it says if a person is completely unaware of the illegal entry, his ability to consent would not be impaired and the taint would be effectively purged. Now, that had slightly different because you're talking about illegal entry as opposed to here, the idea being that he didn't know that they were planning to arrest him. But it seems to me like that has some relevance. Can I ask something that at least to me is crucial here? Sorry, I'm over time. Yeah, well, as long as we're asking you questions, it's okay. As I understand it, the defendants never raised this issue below, and they expressly waived the issue of saying that the voluntary consent purged the taint of the Fourth Amendment. Do you agree with that? It was not ever raised below. Ever raised below, and wasn't it conceded in the reprieve that this issue was waived? Oh, sorry, no, it was definitely not argued ever that the claim of valid consent was waived. I understand. What I'm saying is I understand it. I understand all this discussion about the consent and so on. It's very interesting stuff. But in this case, it was not raised below, and it was expressly waived and concededly so in the reply brief. If that's so, doesn't that dispose of the consent issue? No. The claim that the consent was invalid was raised below. A claim that's raised below is preserved for appeal even if the exact arguments were not made. You can make the same arguments to support a claim that was raised below. You can make those for the First Amendment. But you're arguing against your own case. The issue of our claim was that the consent was not valid. No, I'm talking about the other side. My understanding is that the defendants did not raise the issue below, and they expressly agreed in the reply brief that the alleged voluntary consent purged the taint of the Fourth Amendment violation was waived. Okay, then I agree with that. Thank you very much. Any other questions by either of my colleagues? Thank you both. This is a fascinating case. I don't know how the heck we got it, but we've got it. So the case just argued is submitted, and the Court stands adjourned for the day.
judges: SMITH, BADE, VANDYKE